UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA SEGISMUNDO,<br><br>Plaintiff,<br><br>v.<br><br>RANCHO MURIETA COUNTRY CLUB,<br><br>Defendant. | No. 2:21-cv-02272-DAD-JDP<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION<br><br>(Doc. No. 10) |

This matter is before the court on plaintiff's motion to remand this action to the Sacramento County Superior Court. (Doc. No. 10.) On February 23, 2022, plaintiff's motion was taken under submission by the previously assigned district judge on the papers. (Doc. No. 17.) On August 25, 2022, the case was reassigned to the undersigned. (Doc. No. 19.) For the reasons set forth below, the court will grant plaintiff's motion to remand.

**BACKGROUND**

On September 23, 2021, plaintiff Maria Segismundo filed a class action lawsuit against defendant Rancho Murieta Country Club in Sacramento County Superior Court. (Doc. Nos. 1 at ¶ 1; 1-1 at 4.) In her complaint, plaintiff asserts ten causes of action under state law: (1) unfair competition in violation of California Business and Professions Code § 17000, *et seq*. ("UCL"); (2) failure to pay minimum wages in violation of California Labor Code §§ 1197 and 1197.1; (3) failure to pay overtime wages in violation of California Labor Code § 510; (4) failure to provide

1

required meal periods in violation of California Labor Code §§ 226.7 and 512 and the applicable Industrial Welfare Commission ("IWC") wage order; (5) failure to provide required rest periods in violation of California Labor Code §§ 226.7 and 512 and the applicable IWC wage order; (6) failure to provide accurate itemized statements in violation of California Labor Code § 226; (7) failure to reimburse employees for required expenses in violation of California Labor Code § 2802; (8) failure to provide wages when due in violation of California Labor Code §§ 201 to 203; (9) failure to provide gratuities in violation of California Labor Code § 351; and (10) constructive discharge and other adverse employment actions in violation of public policy. (Doc. No. 1-1 at 4.)

On December 9, 2021, defendant removed this action to this federal court pursuant to 28 U.S.C. §§ 1331 and 1441(a) on the grounds that federal question jurisdiction exists because plaintiff's claims are preempted under § 301 of the Labor Management Rights Act ("LMRA"), 29 U.S.C. § 185. (Doc. No. 1 at ¶ 4.) On January 6, 2022, plaintiff filed the pending motion to remand, asserting that none of her claims are preempted. (Doc. No. 10.) Defendant filed an opposition on February 15, 2022, and plaintiff filed her reply thereto on February 22, 2022. (Doc. Nos. 14, 16.)[1]

**LEGAL STANDARD**

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a).

---

[1] In her reply, plaintiff requests that the court strike defendant's opposition in its entirety and issue sanctions against defendant for filing an opposition brief that exceeds the page limit by two pages, in violation of the previously assigned district judge's standing order. (Doc. No. 16 at 2) (citing Doc. No. 9-2 at 1) ("Violation of this Order will result in monetary sanctions being imposed against counsel in the amount of $50.00 per page and the Court will not consider any arguments made past the page limit."). In reviewing defendant's opposition, however, the court notes that because the brief started on the caption page and ended just a few lines onto the signature page, there were effectively six lines of additional text beyond the page limit. The undersigned declines to impose sanctions for such a *de minimis* violation.

The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction by a preponderance of the evidence. *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010); *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). If there is any doubt as to the right of removal, a federal court must reject jurisdiction and remand the case to state court. *Matheson v. Progressive Specialty Ins. Co*., 319 F.3d 1089, 1090 (9th Cir. 2003); *see also Valdez v. Allstate Ins. Co*., 372 F.3d 1115, 1118 (9th Cir. 2004).

A party's notice of removal must contain "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure," and a "statement 'short and plain' need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84, 87 (2014); *see also Ramirez-Duenas v. VF Outdoor, LLC*, No. 1:17-cv-0161-AWI-SAB, 2017 WL 1437595, at *2 (E.D. Cal. Apr. 41, 2017) ("The notice of removal may rely on the allegations of the complaint and need not be accompanied by any extrinsic evidence.").

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) ("Removal based on federal-question jurisdiction is reviewed under the longstanding well-pleaded complaint rule."). "[T]he presence of a federal question . . . in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar*, 482 U.S. at 398–99.

/////

/////

## ANALYSIS

**A.     Preemption under § 301 of the LMRA**

In its notice of removal, defendant asserts that this court has federal question jurisdiction over this action because adjudication of plaintiff's claims requires interpretation of the terms of the collective bargaining agreements ("CBAs") between Rancho Murieta Country Club and certain unions, and, therefore, plaintiff's claims are preempted by § 301 of the LMRA. (Doc. No. 1 at ¶ 14.) In the pending motion to remand, plaintiff argues that none of her claims are preempted because those claims do not rely on the CBAs or depend on interpretation of the CBAs' provisions. (Doc. No. 10-1 at 6.) The central question here is whether, as defendant argues, plaintiff's claims are preempted by federal law. Discussion of the relevant legal framework with respect to that issue is therefore necessary.

Section 301 of the LMRA, codified at 29 U.S.C. § 185(a), provides federal courts with original jurisdiction, regardless of the amount in controversy or citizenship of the parties, over any lawsuits "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). In the specific context of preemption under § 301 of the LMRA, the Ninth Circuit has recognized that preemption "has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)). Section 301 "authoriz[es] federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Id.* at 1151 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) and *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962)). As the Ninth Circuit has explained,

> federal preemption under § 301 "is an essential component of federal labor policy" for three reasons. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 917–18 (9th Cir. 2018) (*en banc*). First, "a collective bargaining agreement is more than just a contract; it is an effort to erect a system of industrial self-government." *Id.* at 918 (internal quotation marks and citations omitted). Thus, a CBA is part of the "continuous collective bargaining process." *United Steelworkers v. Enter. Wheel & Car Corp.* (*Steelworkers III*), 363 U.S. 593, 596 (1960). Second, because the CBA is designed to govern the entire

> employment relationship, including disputes which the drafters may not have anticipated, it "calls into being a new common law—the common law of a particular industry or of a particular plant." *United Steelworkers v. Warrior & Gulf Navigation Co.* (*Steelworkers II*), 363 U.S. 574, 579 (1960). Accordingly, the labor arbitrator is usually the appropriate adjudicator for CBA disputes because he was chosen due to the "'parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment." *Id.* at 582. Third, grievance and arbitration procedures "provide certain procedural benefits, including a more prompt and orderly settlement of CBA disputes than that offered by the ordinary judicial process." *Schurke*, 898 F.3d at 918 (internal quotation marks and citation omitted).

*Id.* at 1152.

The determination of whether a claim is preempted by § 301 is made by way of a two-step inquiry. The first question is "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law," or if instead the right is conferred by a CBA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). This step requires the court to consider "the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994) (citation omitted). If the asserted cause of action is conferred solely by the CBA, the claim is preempted. *Burnside*, 491 F.3d at 1059. If not, the court must still decide whether the claim is "'substantially dependent' on the terms of a CBA" by determining "whether the claim can be resolved by 'looking to' versus interpreting the CBA." *Id*. at 1059–60 (citations omitted). "The term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000). If the claim requires interpretation of the CBA, the claim is preempted; if the claim merely requires "looking to" the CBA, it is not preempted. *Burnside*, 491 F.3d at 1060. Once preempted, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

The Supreme Court has explained that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301."

5

*Allis-Chalmers*, 471 U.S. at 211. Under the second step of *Burnside*, there will only be preemption if there is an active dispute concerning the meaning of the agreement's terms. *Curtis*, 913 F3.d at 1153; *see also Torres v. S. Cal. Permanente Med. Grp.*, No. 22-cv-1910-MWF-MAR, 2022 WL 2116339, at *7 (C.D. Cal. June 13, 2022) (finding plaintiff's claims required interpretation of the CBA and were thus preempted under the second part of *Burnside* where the plaintiff argued that "Kaiser failed to follow its own progressive discipline policies required by the CBA"); *Warren v. WinCo Foods, LLC*, No. 1:22-cv-00594-SAB, 2022 WL 3026785, at *12 (E.D. Cal. Aug. 1, 2022) (concluding that the plaintiff's claim of defamation was inextricably intertwined with the collective bargaining agreement and preempted by § 301). "[A]lleging a hypothetical connection between the claim and the terms of the CBA is not enough" to trigger preemption. *Cramer*, 255 F.3d at 691; *see also Humble v. Boeing Co.*, 305 F.3d 1004, 1010 (9th Cir. 2002) (explaining "a CBA provision does not trigger preemption when it is only potentially relevant to the state law claims, without any guarantee that interpretation or direct reliance on the CBA terms will occur"); *Andrade v. Rehrig Pac. Co.*, No. 2:20-cv-01448-FMO-RAO, 2020 WL 1934954, at *5 (C.D. Cal. Apr. 22, 2020) (finding that the defendant's assertions were "no more than an attempt to manufacture preemption unrelated to the resolution of plaintiff's claim" and that they, at best, did no more than establish a "hypothetical connection" between the CBA and the plaintiff's claims); *Coy v. S. Home Care Servs., Inc.*, No. 2:21-cv-00067-JAM-CKD, 2021 WL 1608957, at *4 (E.D. Cal. Apr. 26, 2021) (remanding a case to state court after finding that the defendants had not made the requisite showing to trigger preemption under the second part of *Burnside* and had only shown a "hypothetical connection" between the claims and the terms of the CBA). In short, state law claims that do not raise questions about the CBA's "scope, meaning, or application" avoid preemption. *Curtis*, 913 F.3d at 1153; *see also Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806, 818 (C.D. Cal. 2020) (remanding a case after concluding that a court would not be required to interpret the CBA to resolve any of the plaintiff's claims).

**B.     Application**

Here, defendant offers undisputed evidence that plaintiff was subject to the terms of a CBA between defendant and the Unite Here Local 49 union ("Unite Here CBA") during her

1   employment with defendant. (Doc. Nos. 1 at ¶ 4; 10-1.) Moreover, defendant argues that

2   plaintiff's putative class claims also trigger preemption based on interpretation of another CBA

3   because the putative class includes defendant's non-exempt employees who work "grounds crew"

4   and who are subject to a CBA between defendant and Operating Engineers Local 3 union ("OE3

5   CBA"). (*Id.* at ¶ 8.)

6   Applying the first step of the analysis set out by the court in *Burnside*, it is clear that

7   plaintiff's claims are grounded in California law and are not based on the Unite Here CBA or the

8   OE3 CBA (collectively, "the CBAs"). *See Burnside,* 491 F.3d at 1059. Indeed, defendant does

9   not contest that plaintiff's claims arise out of state law. Rather, defendant focuses its opposition

10  to the pending motion to remand on *Burnside*'s second prong, arguing that plaintiff's claims

11  require interpretation of the CBAs. (Doc. No. 14.) Accordingly, the court now turns to the

12  question of whether plaintiff's claims are "'substantially dependent' on the terms of a CBA" by

13  examining "whether the claim can be resolved by 'looking to' versus interpreting the CBA." *See*

14  *Burnside*, 491 F.3d at 1060. For the reasons explained below, the court concludes that plaintiff's

15  claims are not dependent on an interpretation of the relevant CBAs.

16      1.   <u>UCL, Minimum Wage, Meal and Rest Periods, and Reimbursement Claims</u>[2]

17  Addressing plaintiff's minimum wage claim, defendant argues that "overlapping

18  timekeeping provisions" in the Unite Here CBA require interpretation to identify whether the

19  timekeeping system is deceptive and causes the alleged lost wages. (Doc. No. 14 at 8.) The

20  Unite Here CBA, under a section that addresses "reporting pay," specifies that employees "will

21  punch or sign in at their assigned time-clock" "[n]o earlier than five (5) minutes prior to the

22  beginning of their prescribed shift and no more than five (5) minutes after their shift unless

23  overtime is authorized." (Doc. No. 14-2 at 10.) It further provides that "discrepancies must be

24  corrected in a mutually agreed upon time frame by the employee." (*Id.*) Defendant argues that

25  these provisions conflict with another provision that states that "[r]egularly scheduled employees

26

27  [2] Because plaintiff's UCL claim is derivative of her other claims, namely for defendant's alleged
    failure to pay minimum wages, provide required meal and rest periods, and reimburse employees
28  for required expenses, the court need not analyze that claim separately.

7

shall have a *fixed starting time*, which time shall not be changed by the employer without giving a twenty-four (24) hour notice to the employee affected." (Doc. Nos. 14 at 8; 14-2 at 11) (emphasis added). According to defendant, a court must interpret these provisions to determine whether the Unite Here CBA's terms mean that employees start working at the commencement of a fixed shift or whether they instead mean that the shift does not start until the employee clocks in. (Doc. No. 14 at 9.) However, in reviewing these provisions, the court notes that the defendant's reference to the latter provision, which states that "employees shall have a fixed starting time," is found in a section of the CBA that deals with "work schedule," rather than "reporting pay." (Doc. No. 14-2 at 9, 11.) Thus, this court agrees with plaintiff that these provisions are not conflicting and actually address "different issues: (1) the time and grace period of when you punch in for your scheduled shift and (2) the date and time your shift begins." (*See* Doc. No. 16 at 4.) As such, defendant has not established that plaintiff's minimum wage claim requires interpretation of the Union Here CBA. Instead, defendant has merely manufactured a dispute that does not actually exist. *See Andrade*, 2020 WL 1934954, at *5. Furthermore, defendant contends that the court will need to interpret the OE3 CBA provisions in order to clarify whether defendant maintains a practice of paying compensation without regard to the time employees spend working. (Doc. No. 14 at 12.) Defendant points to the provision in the OE3 CBA which states that "[a]ll straight-time shall be reckoned by the day (8 hrs) and half day (4 hrs)" and "[o]vertime shall be reckoned by the hour and quarter hour." (Doc. No. 14-2 at 37.) However, plaintiff is not relying on this provision of the OE3 CBA in asserting her claim, nor is she disputing what that provision of the CBA means. *Khanal v. S.F. Hilton, Inc.*, 681 F. App'x 624, 625 (9th Cir. 2017) ("[M]erely referring to uncontested provisions of the CBA does not result in LMRA preemption.").[3] The fact that there is a provision in the OE3 CBA that provides for the accounting of hours worked does not necessarily mean that the court would have to interpret that provision, as opposed to merely "look to" it. *See Burnside*, 491 F.3d at 1060; *see also Wilson-Davis*, 434 F. Supp. 3d at 814 n.3

/////

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1 (rejecting the defendant's argument that the CBA needed to be interpreted, as opposed to merely referenced, where its provisions for compensation "required no more than simple math").

As to plaintiff's meal and rest period claims, defendant argues that these claims require interpretation of the CBAs because there is an ambiguity regarding whether the CBAs allow for a waiver by employees of their meal and rest breaks. (Doc. No. 14 at 11, 14.) However, in California, meal and rest periods are nonnegotiable. *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1082 (9th Cir. 2005) (holding that the right to meal periods constitutes nonnegotiable rights under state law); *Zavala v. Scott Bros. Dairy*, 143 Cal. App. 4th 585, 593–94, 596 (2006) (holding that both meal and rest breaks are nonwaivable state-mandated minimum labor standards). The LMRA cannot preempt nonnegotiable rights. *Valles*, 410 F.3d at 1076 (clarifying that § 301 of the LMRA "does not permit parties to waive, in a collective bargaining agreement, nonnegotiable state rights") (quoting *Balcorta*, 208 F.3d at 1111). As such, because plaintiff's meal and rest break claims are based on nonnegotiable state rights, they are not preempted by § 301. *See Sadino v. Propark Am. W., LLC*, No. 17-cv-06018-JST, 2018 WL 1464012, at *2 (N.D. Cal. Mar. 26, 2018) (holding that plaintiff's meal period and rest break claims were not preempted since they were based on nonnegotiable state rights); *Moore v. Aramark Unif. Servs., LLC*, No. 17-cv-06288-JST, 2018 WL 701258, at *5 (N.D. Cal. Feb. 5, 2018) ("[T]he right to rest breaks is non-negotiable and therefore not subject to section 301 preemption.").

As for plaintiff's claim for reimbursement of business expenses involving personal cell phones, defendant argues that claim is preempted because the CBAs expressly require workers and managers to communicate, but do not expressly require workers to communicate using their own cell phones. (Doc. No. 14 at 10.) In support of its argument that interpretation of the CBAs is necessary in order to resolve this claim, defendant points to the Unite Here CBA's requirement that union employees are expected to "check out and back in with their Lead or Supervisor" each day for their meal periods. (Doc. Nos. 14 at 10; 14-2 at 12.) Also, defendant points to the Unite Here CBA's requirement that employees' schedules will not change without 24-hour notice, though it is not clear why defendant believes that provision supports its preemption argument. (Doc. Nos. 14 at 10; 14-2 at 11.) In relation to the OE3 CBA, defendant points to job

9

descriptions, which require, for example, a golf course maintenance apprentice 1 to "report equipment problems or failure to the equipment manager immediately." (Doc. Nos. 14 at 10–11; 14-2 at 59.) However, defendant's argument and examples do not establish that CBA interpretation issues would necessarily arise. *See Cramer*, 255 F.3d at 692 ("A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility."). Notably, plaintiff contends that these issues will not arise in this case because there is no actual dispute between her claims and the terms of the CBA. (Doc. No. 16 at 4.) The court finds defendant has not carried its burden to show otherwise.

          2.        <u>Unpaid Overtime Wages Claim</u>

Defendant next argues that plaintiff's overtime claim requires interpretation of the two CBAs to determine whether defendant's policy and practice results in accurate timekeeping or whether it results in unpaid overtime in the event overtime is unapproved. (Doc. No. 14 at 13.) Defendant points to the Unite Here CBA's provisions that supervisors must approve overtime and have the authority to adjust recorded time for infractions of timekeeping. (Doc. Nos. 14 at 13; 14-2 at 10.) However, defendant has failed to adequately explain why interpretation, as opposed to mere reference to the Unite Here CBA, is necessary to resolve this claim. *See Wilson-Davis*, 434 F. Supp. 3d at 813 ("Defendants must explain *why* interpretation, as opposed to mere reference to the CBA, is necessary."). The OE3 CBA's provisions specify that straight time must be "reckoned by the day and half day and overtime shall be reckoned by the hour and quarter hour," and defendant argues that these provisions must be interpreted to determine whether "reckoning" by the hour and quarter hour amounts to an underpayment or estimate of time worked. (Doc. Nos. 14 at 13–14; 14-2 at 37.) However, as discussed above, plaintiff's overtime claim is not based on these provisions of the OE3 CBA. For example, plaintiff's complaint does not allege that defendant's "reckoning" policy of using the hour and quarter hour markers for overtime leads to an underpayment in the amount of overtime wages due. Moreover, defendant offers no explanation as to how those provisions would need to be interpreted, as opposed to referenced. *See Burnside*, 491 F.3d at 1060. Thus, although there are provisions in the CBAs

governing the accounting of hours, the existence of such provisions alone is insufficient to deem plaintiff's overtime claim preempted by § 301.

### 3. Wage Statement and Waiting Time Penalty Claims

As to the wage statement and waiting time penalty claims, defendant contends that they are derivative claims, based on the underlying alleged failure to provide breaks and pay wages. (Doc. No. 14 at 14.) Since the court concludes that the underlying claims are not preempted, these derivative claims are likewise not preempted.

### 4. Gratuities Claim

Lastly, as to plaintiff's claim that defendant failed to provide gratuities, defendant argues that its tipping policy requires interpretation of the Unite Here CBA. (*Id.*) The court does not agree. In her complaint, plaintiff alleges that defendant failed to pay all gratuities earned by "non-managerial banquet service employees" to those employees, and she claims that this practice violates California Labor Code § 351, which provides that tips should be allocated to the employee who earned them. (Doc. No. 1-1 at ¶¶ 19, 115). She also alleges that defendant has a policy and practice of retaining for itself a portion of these gratuities. (*Id.* at ¶ 19.) The Unite Here CBA unambiguously states that "[z]ero percent (0%) of any gratuity charge component will be retained by the house." (Doc. No. 14-2 at 27.) Thus, because plaintiff is alleging that the house retained a portion of those gratuities, no court will need to interpret the CBA to address this claim.

In sum, defendant has failed to show by a preponderance of the evidence that any of plaintiff's claims trigger preemption under *Burnside*.[4]  Federal jurisdiction must be rejected when

---

[4] The court does not address defendant's arguments with respect to plaintiff's constructive discharge claim because defendant merely lists several provisions of the Unite Here CBA that may require interpretation, without providing any elaboration. (Doc. No. 14 at 16); *see Wilson-Davis*, 434 F. Supp. 3d at 813 ("It is not enough for Defendants to provide a laundry list of provisions that they allege the Court must interpret to resolve Plaintiff's claims."). Moreover, defendant appears to rely heavily on the argument that the court has supplemental jurisdiction over plaintiff's remaining claims. (Doc. No. 14 at 16). Because defendant has not proven that any of plaintiff's claims are preempted by the LMRA, this court lacks subject matter jurisdiction over this action and cannot exercise supplemental jurisdiction over any of these claims. *See Moore*, 2018 WL 701258, at *5.

there is any doubt as to the right of removal. *Matheson*, 319 F.3d at 1090. Such doubt exists here. Accordingly, this case must be remanded to the Sacramento County Superior Court.

### CONCLUSION

For the reasons explained above:

1. Plaintiff's motion to remand (Doc. No. 10) is granted;

2. This action is remanded to the Sacramento County Superior Court due to this court's lack of subject matter jurisdiction; and

3. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: **October 14, 2022**

_____
UNITED STATES DISTRICT JUDGE